IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA HACKETT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GREYHOUND LINES, INC. | : | NO. 08-237 |

**MEMORANDUM OF DECISION**

THOMAS J. RUETER                                                                June 11, 2009
Chief Magistrate Judge

      Presently before the court is defendant Greyhound Lines Inc.'s Motion In Limine To Preclude The Plaintiff From Presenting A Claim For Further Lost Wages (Doc. No. 43) and plaintiff's response thereto (Doc. No. 44). For the reasons that follow, defendant's Motion is denied in part and granted in part.

**I.   BACKGROUND**

      At the trial, plaintiff will present the following evidence. On October 1, 2006, plaintiff, Cynthia Hackett, was injured while she was a passenger on a Greyhound bus which collided with another Greyhound bus at the intersection of 8th and Cherry Streets in Philadelphia, Pennsylvania.

      As the result of the accident, plaintiff sustained a torn rotator cuff of the left shoulder. Plaintiff's treating physician will testify that as a result of the injury, plaintiff will continue to experience occasional discomfort and fatigue involving her left shoulder especially with prolonged repetitive or exertional activities at or above the shoulder level. The medical expert will further opine that plaintiff will have permanent restrictions and limitations involving

her left shoulder that will affect her ability to perform her job duties with the United States Postal Service ("USPS").

Plaintiff has been an employee of the USPS since 1993. For some of the years of her employment, Ms. Hackett worked as a mail handler which required her to load and unload mail from mail trucks parked at the dock. Her duties included lifting trays of mail weighing between thirty to forty pounds and loading the mail onto conveyor belts. Prior to the accident, she often would push and pull containers which were ten feet high and weighed sixty to seventy pounds.

At the time of the accident, plaintiff worked as an Acting Supervisor in the Time and Attendance office. This was a clerical position which did not require her to lift heavy objects. She will testify that on many days she worked overtime in the Automation Department after she completed her eight hour shift in the Time and Attendance office. While working overtime in the Automation Department, plaintiff was required to perform physical work lifting trays filled with mail weighing thirty to forty pounds and loading mail onto conveyor belts. Plaintiff further states that prior to the accident, she typically worked ten hour days, six days a week, receiving overtime pay.

Following the accident, plaintiff did not work from October 1, 2006 through October 22, 2006. When she returned to work, the USPS assigned her to light duty which required no overhead or heavy lifting. This accommodation complied with the restrictions and

limitations prescribed by plaintiff's physician which required her to work permanently in a light duty capacity. Under the USPS Guidelines, plaintiff is now considered a light duty employee.[1]

At the upcoming trial, plaintiff intends to present a claim for compensatory damages for loss of future earning capacity under two theories. First, because plaintiff is no longer able to do the physical aspects of loading and sorting mail, she is not eligible to work in the Automation Department and earn overtime compensation. Second, plaintiff is under an increased risk of losing her job under a new collective bargaining agreement to be negotiated between the USPS and the American Postal Workers' Union ("Union") to take effect in November, 2010. Because plaintiff's current job classification is "light duty status," it may lose its status as a non-lay off position that it now enjoys under the current collective bargaining agreement. Plaintiff argues that mail handlers who are not light duty employees will remain protected from lay-offs under any future contract, but she can no longer perform this job because of her injuries.

Defendant has filed this Motion to preclude plaintiff from presenting either of these two theories of lost future earning capacity on the grounds that both theories are too speculative to permit an award of damages under Pennsylvania law.

## II.     DISCUSSION

The parties agree that Pennsylvania law governs the law of damages in this case. Under Pennsylvania law, a party may not present speculative damages to the jury. <u>Blanche Road</u>

---

[1] Defendant disputes that plaintiff's current position as an acting supervisor is considered a light duty employee. Evidence in the record supports this position. <u>See</u> Deposition of Kevin Christian at 19. For purposes of this Motion, however, the court will assume that plaintiff is considered a light duty employee.

Corp. v. Bensalem Township, 57 F.3d 253, 265 (3d Cir.), cert. denied, 516 U.S. 915 (1995). Speculative damages are "[p]rospective or anticipated damages from the acts or facts constituting the present cause of action, but which depend upon future developments which are contingent, conjectural, or improbable." Black's Law Dictionary 392 (6th ed. 1990). "Damages are considered speculative if 'the uncertainty concerns the fact of damages, not the amount.'" Bensalem Township, 57 F.3d at 265 (quoting Carroll v. Philadelphia Housing Auth., 168 Pa. Commw. 275, 650 A.2d 1097 (Pa. Commw. Ct. 1994)). "Damages are considered remote or speculative only if there is uncertainty concerning the identification of the existence of damages rather than the ability to precisely calculate the amount or value of damages." Myers v. Robert Lewis Seigle, P.C., 751 A.2d 1182, 1184 (Pa. Super. Ct. 2000), appeal denied, 795 A.2d 978 (Pa. 2000). See also Grimes v. Northwest Airlines, Inc., 1999 WL 527831, at *1 (E.D. Pa. July 22, 1999) ("Parties may not present speculative damages testimony to a jury."); Aircraft Guar. Corp. v. Strato-Lift, Inc., 991 F. Supp. 735, 739 (E.D. Pa. 1998) ("[A] jury may not award damages on the basis of speculation and conjecture."); Sprang & Co. v. U.S. Steel Corp., 545 A.2d 861, 866 (Pa. 1988) ("As a general rule, damages are not recoverable if they are too speculative, vague or contingent and not recoverable for loss beyond an amount that the evidence permits to be established with a reasonable certainty.").

### A. **Lost Overtime Hours**

Defendant argues that the undisputed evidence will show that plaintiff did work overtime **after** the accident. In fact, defendant claims that "Ms. Hackett actually worked **more** overtime hours after she injured her shoulder than before the accident." (Def.'s Mem. at 7) (emphasis in original). Defendant points out that in 2006, in the twenty-one pay periods prior to

4

the accident, plaintiff worked a total of approximately 128 hours of overtime, while in the five pay periods of 2006, after her injury, she worked more than 210 hours of overtime.  Id. Defendant notes that in 2007, plaintiff worked 410 hours of overtime, and in 2008 she worked another fifty-six hours of overtime, until she had a dispute with her supervisor in April 2008, which resulted in her demotion from her position as an Acting Supervisor to a mail clerk position.  Id. at 8.  According to defendant, it was this demotion that caused plaintiff to lose the opportunity to work overtime.  Id. at 9.

      Plaintiff admits that she did work overtime hours in 2006, 2007 and 2008 after the accident in a clerical position.  (Pl.'s Resp. at 6.)  Nonetheless, plaintiff states that her supervisor, William Hardy, will testify that currently overtime is available only to plaintiff if she is "able to work in the automation department of USPS."  Id. at 6-7.  As noted earlier, plaintiff's evidence will suggest that because of her physical restrictions, plaintiff cannot work in the Automation Department.[2]  Moreover, Mr. Hardy will testify that currently there "is no opportunity to work overtime in a clerical position such as the Time and Attendance office."  Id. at 7.  Plaintiff explained that in November, 2008, she apologized to her supervisor for the dispute she had with him and she "was promoted back to acting supervisor."  Id. at 6.  She is, therefore, eligible for overtime in the Automation Department.  Defendant is correct that plaintiff is not eligible for damages for lost overtime hours resulting from her demotion to a mail clerk position, because the demotion had nothing to do with defendant's conduct.  However, since she has been restored to Acting Supervisor of the Time and Attendance Department, she is again eligible for overtime

---

    [2]    At oral argument, defendant stated that plaintiff did work in the Automation Department in early 2008, after the accident.  Plaintiff, however, maintains that because of her injuries caused by the accident, she cannot now work in the Automation Department.

hours working in the Automation Department.  Therefore, plaintiff is not precluded from presenting testimony of loss of future earning capacity after November 2008 based on lost overtime hours in the Automation Department resulting from injuries sustained in the bus accident.

### B.     Possibility of Lay-Off of Light Duty Employees

At trial, plaintiff will argue that she is entitled to receive damages for future lost wages because she may be terminated in November, 2010 when the new collective bargaining agreement between the USPS and the Union is expected to be executed.  Defendant has moved to exclude this evidence, arguing that "[b]esides rumors and hearsay, Ms. Hackett has not been able to provide a scintilla of admissible evidence to support her claim." (Def.'s Mem. at 5.)

In support of her future wage loss claims, plaintiff will call Andrew G. Verzilli, Ph.D., an economist, as an expert witness.  Dr. Verzilli will testify that plaintiff will lose between $601,746.00 to $925,785.00 in future lost wages.  See Verzilli Report, 12/19/08, at 2.  In reaching this conclusion, he makes two assumptions.  First, that "Ms. Hackett will not be able to continue in Postal Service employment in six months (i.e., in June, 2009)." Id. at 1.  Second, he assumed that Ms. Hackett will not be able to work "by the end of the current Postal Service contract in November, 2010." Id.  Dr. Verzilli states, "It is our understanding that Ms. Hackett is now at increased risk of losing her position at the Postal Service." Id.  Dr. Verzilli, in his Report, did not cite to any portion of the record that supports this "understanding."

In plaintiff's opposition to defendant's Motion, she cites to the deposition of Nick Casselli, Chief-Steward, Tour 1 of the Union, Philadelphia, Pennsylvania, to support her claim that there is a possibility of her being laid off in November, 2010.  Mr. Casselli testified that he

6

had been a local union representative since 1995.  (Casselli Dep. at 5-6.)  His responsibilities include "deal[ing] with the issues on the work floor, grievances, harassment cases, general labor management meetings with the higher-ups, managers and plant managers."  Casselli Dep. at 6.  Mr. Casselli testified that when the new union contract is negotiated in November, 2010, the USPS will attempt to persuade the Union to drop the "no lay-off" provision which prohibits the lay-off of any postal employee who has been employed for more than six years.  Mr. Casselli therefore suggests that in the new contract light duty workers, such as plaintiff, may be unprotected from lay-offs.  He stated:

> Just the recent last four to five years because of the Internet it has taken a lot of work away from us, UPS has taken work away from us, we are subcontracting a lot of work out, and it is all signs to try and privatize it in a small way, that has affected jobs, and they are calling for massive cut backs everywhere.  Now they are saying that there are shortages of work in certain areas, and the first people that are going to be affected [sic].  Like I said, they consider these people useless, they can't perform the duties the Post Office needs them to perform on a day in day out basis.  So when things do come down, and they are about ready to bring the hatchet down, the light duty people are going to be affected first.  I am not saying that is what they are saying, but that is how we read it at the tables.

Casselli Dep. at 37-38.

       This court finds that the above testimony is too speculative a basis for Dr. Verzilli to opine that plaintiff will most likely lose her position at the Postal Service in November, 2010 because of her light duty status.  It is undisputed that under the current collective bargaining agreement, plaintiff cannot be terminated without cause from her employment because she has more than six years of service.  Plaintiff has not shown that Mr. Casselli, a local union steward, has been or will be directly involved in the negotiations for the November, 2010 contract between the USPS and the Union.  Indeed, there has been no evidence presented that any 2010

contract negotiations have even begun.  Mr. Casselli has candidly admitted that he does not know for certain that the USPS will seek to eliminate light duty employees, but this is just a suspicion. He said, "I am not saying that is what they (USPS) are saying, but this is how we read it at the tables."  (Casselli Dep. at 38.)  This is the type of rank speculation which Pennsylvania law prohibits a jury to rely upon to base an award of future loss wages.  Indeed, at one point in his deposition, Mr. Casselli denied that in November, 2010, light duty employees would be permanently laid-off, but only would be told by the USPS to "stay home" until it found work for them.  Mr. Casselli testified as follows:

> Q.   So as far as I understand it, as we sit here today Ms. Hackett is not at risk, currently at risk of being laid off?
> A.   Correct.
> Q.   Am I correct that in the history of the United States Postal Service since your current agreement has come in place no employees have been laid off?
> A.   Correct.
> Q.   But it is your understanding, and if I am misstating please let me know, when the new contract comes about, when is that scheduled?
> A.   November 2010.
> Q.   This contract ends in November?
> A.   Collective bargaining agreement is over, yes.
> Q.   It is your understanding that as part of the new contract the Postal Service would put in a policy that will allow them to lay off light duty employees?
> A.   <u>No, that is not my understanding.</u>
> Q.   Why don't you explain?
> A.   The thing is this, is the thing that what they try to do is the Post Office feels this way, light duty and limited duty people are no use to them anymore.  Limited duty are people injured on the job; light duty are people injured outside the job.  Limited they have to deal with as far as the Department of Labor, they have to find them work, and if they don't find them work they can just sit there, but they have to pay them.  Light duty, they know, if they can state that they have done to their best ability to try to find them people work and cannot find them work, they can send them home and tell them to stay home until they find work for them.

(Casselli Dep. at 20-22) (emphasis added).  Mr. Casselli further testified that he was aware of only two instances when the USPS could not find work for a light duty employee at the facility where plaintiff worked.  Id. at 30.

Moreover, Mr. Casselli emphasized that the Union highly values the "no lay-off" clause in the current collective bargaining agreement, and it will vigorously fight any effort from management to eliminate it in a new agreement.  He explained that if the USPS insists upon eliminating the no lay-off clause, the Union will call a strike.  The Union previously had agreed to a no-strike clause, prohibiting the Union to strike, in return for the no lay-off provision. Casselli Dep. at 51-53, 69.

Finally, Dr. Verzilli's assumption that plaintiff would not be employed at the Postal Service in June, 2009 is unfounded, since as plaintiff's counsel admitted at oral argument, held on June 9, 2009, his client is still working at the USPS.

In conclusion, the court will permit plaintiff to present testimony supporting her argument that as a result of the accident, she lost the opportunity to work overtime hours and should be awarded damages to compensate her for the loss.  There is some evidence to support that claim.  However, plaintiff will be prohibited from presenting evidence and argument that she is entitled to damages because she may be laid-off from work in November, 2010 because of a new collective bargaining agreement, not yet negotiated or executed.

An appropriate order follows.

BY THE COURT:

 /s/ Thomas J. Rueter
THOMAS J. RUETER
Chief United States Magistrate Judge